UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSE F. OLIVARES,

    Plaintiff,

v.

PERFORMANCE CONTRACTING
GROUP, *et al.*,

    Defendants.

Case No. 22-cv-10574
Hon. Matthew F. Leitman

_____/

**<u>ORDER (1) OVERRULING OBJECTIONS TO REPORT AND RECOMMENDATION (ECF Nos. 65, 66); (2) ADOPTING RECOMMENDED DISPOSITION OF REPORT AND RECOMMENDATION (ECF No. 54); (3) GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 46); (4) DENYING PLAINTIFF'S MOTION TO SUPPLEMENT PLEADINGS (ECF No. 49); AND (5) TERMINATING PLAINTIFF'S REMAINING MOTIONS (ECF Nos. 47, 50, 69)</u>**

In May 1998, Plaintiff Jose F. Olivares fell off a ladder while performing work for his employer, Defendant Performance Contracting Group ("PCG"). The fall tore Olivares' left rotator cuff, and he subsequently underwent surgery in an effort to repair that tear. Olivares says that the surgery was not successful. Under Michigan's Workers' Disability Compensation Act of 1969, Mich. Comp. Laws § 418.101, *et seq*. (the "WDCA"), the exclusive remedy for Olivares' injury was to apply for workers' compensation benefits. He did that and received those benefits. However, Olivares believed that he was entitled to more, and he has spent more than twenty

1

years repeatedly filing actions in different forums (including several different suits in this Court) seeking additional compensation arising out of his shoulder injury.

This is another such case. In this diversity action, Olivares says that the WDCA's exclusive-remedy provision does not apply to him because the WDCA allows parties to seek additional compensation for intentional torts. And he says that PCG and its General Counsel, Defendant Charles Williams, committed such an intentional tort here when they persuaded his surgeon to not repair his injured shoulder. (*See* Am. Compl., ECF No. 23.) On January 13, 2023, Defendants moved for summary judgment. (*See* Mot., ECF No. 46.) In that motion, Defendants argued that because Olivares "ha[d] not shown [that] he was intentionally injured […] his action violate[d] the exclusive remedy provision of the [WDCA]." (*Id.*, PageID.46.) Olivares opposed the motion. (*See* ECF Nos. 47, 50.[1])

On February 7, 2023, the assigned Magistrate Judge issued a Report and Recommendation (the "R&R") in which the Magistrate Judge recommended that the Court grant Defendants' motion. (*See* R&R, ECF No. 54.) Olivares thereafter filed timely objections to the R&R (the "Objections"). (*See* Objections, ECF Nos. 65, 66.)

---

[1] Olivares called the filings that contained his rebuttal to Defendants' summary judgment arguments "motions." (*See* ECF Nos. 47, 50.) To the extent those motions are pending on the Court's docket, the Court construes the motions as responses to Defendants' summary judgment motion and **TERMINATES** them.

The Court will discuss both the R&R and Olivares' Objections in much greater detail below.

The Court has carefully reviewed the Objections, and for the reasons explained in this order, it **OVERRULES** them. Accordingly, the Court **GRANTS** Defendants' motion for summary judgment.

**I**

**A**

The Magistrate Judge recounted the facts and procedural history of this case in detail in the R&R. (*See* R&R, ECF No. 54, PageID.469-477.) In short, in 1998, Olivares worked for PCG. While working, Olivares fell off a ladder and tore his left rotator cuff. Defendants thereafter authorized Olivares to have surgery. That is when, according to Olivares, Williams stepped in and prevented Olivares from actually having his shoulder injury repaired. Olivares says that Williams called his (Olivares') surgeon and told the surgeon not to repair Olivares' rotator cuff. Instead, Olivares contends, Williams told the surgeon to place three sutures on a healthy tendon so that the surgeon could deceive Olivares into believing that the shoulder surgery was a success. Olivares maintains that Williams took this action because Williams received a bonus each time an injured employee did not receive compensation following a workplace injury. Olivares says that in 2021, more than twenty years after his surgery, he learned that the same rotator cuff that he injured

in 1998 was torn. Olivares appears to insist that his discovery of a left rotator cuff tear in 2021 is proof that the 1998 tear was never actually repaired.

## B

On March 17, 2022, Olivares filed this action against PCG and Williams. (*See* Compl., ECF No. 1; Am. Compl., ECF No. 23.) Olivares brings an intentional tort claim against Defendants pursuant to Section 131 of the WDCA. (*See id.*)

The WDCA represents a statutory compromise under which "[i]n exchange for the employer's promise to pay certain types of benefits," employees "promise to forsake other remedies." *Jackson v. Sedgwick Claims Mgmt. Services, Inc.*, 731 F.3d 556, 559 (6th Cir. 2013). "This design ensures recovery for injured employees while creating greater certainty for employers." *Id.* "The system achieves this goal, in part, because '[t]he right to the recovery of benefits [under the WDCA is] the employee's exclusive remedy against the employer for a personal injury []. The only exception to this exclusive remedy is an intentional tort." *Id.* (quoting Mich. Comp. Laws § 418.131.) "If this were not the case, injured employees could circumvent the restrictions the WDCA places on the benefits an injured employee is entitled to receive." *Id.* Olivares appears to contend that he is entitled to recover under the intentional-tort exception to the WDCA because the Defendants deliberately prevented him from having his rotator cuff tear repaired.

4

## C

Defendants moved for summary judgment on January 13, 2023. (*See* Mot., ECF No. 46.) In the motion, Defendants argued that because Olivares "has not shown he was intentionally injured, [] his action violates the exclusive remedy provision of the [WDCA]." (*Id.*, PageID.290.)

On February 7, 2023, the Magistrate Judge issued the R&R in which he recommended that the Court grant Defendants' motion. (*See* R&R, ECF No. 54.) The Magistrate Judge concluded that "a review of the record evidence simply belies the underlying basis for [Olivares'] intentional tort claim – *i.e.*, that [the doctor who performed the 1998 surgery] never repaired [Olivares'] *actual* torn rotator cuff and instead fraudulently placed three sutures in a *healthy tendon*." (*Id.*, PageID.481, emphasis in original). The Magistrate Judge then identified substantial evidence in the record that "Olivares' torn rotator cuff was actually repaired during the June 1998 Surgery." (*Id.*, PageID.482.) The Magistrate Judge thus determined that Olivares had "failed to present evidence showing that June 1998 Surgery was anything more than a necessary and successful left rotator cuff repair." (*Id.*, PageID.485.) Finally, the Magistrate Judge concluded that Olivares had "not present[ed] any cognizable evidence" that Williams acted improper in any way related to Olivares' 1998 shoulder surgery. (*See id.*)

## II

Under Federal Rule of Civil Procedure 56, a movant is entitled to summary judgment when it "shows that there is no genuine dispute as to any material fact." *SEC v. Sierra Brokerage Servs., Inc.*, 712 F.3d 312, 326-27 (6th Cir. 2013) (quoting Fed. R. Civ. P. 56). When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.* But "the mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Id.* at 251–52.

When a party objects to portions of a Magistrate Judge's report and recommendation, the Court reviews those portions *de novo*. *See* Fed.R.Civ.P. 72(b)(3); *Lyons v. Comm'r of Soc. Sec.*, 351 F.Supp.2d 659, 661 (E.D. Mich. 2004). The Court has no duty to conduct an independent review of the portions of the R&R to which a party does not object. *See Thomas v. Arn*, 474 U.S. 140, 149 (1985).

### III

Olivares filed objections to the R&R on March 1, 2023. (*See* Objections, ECF No. 65.[2]) The objections are difficult to follow, but Olivares repeatedly argues that his torn rotator cuff was never repaired and that Williams acted intentionally to prevent that repair from happening. (*See id.*) The Court has carefully reviewed the objections, conducted a *de novo* review of the portions of the R&R to which Olivares has objected, and overrules the objections.

First, and most importantly, Olivares has not identified sufficient evidence in the record that could support a finding that Defendants committed an intentional tort under the WDCA. Under that statute, "an intentional tort [] exist[s] only when an employee is injured as a result of a deliberate act of the employer and the employer specifically intended an injury. An employer shall be deemed to have intended to injure if the employee had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge." Mich. Comp. Laws § 418.131(1). As the United States Court of Appeals for the Sixth Circuit has explained, this exception is "very narrow[]" and the "standard for establishing" an intentional tort occurred

---

[2] Olivares filed an amended set of objections – which largely repeat, verbatim, his initial objections – on March 7, 2023. (*See* Am. Objections, ECF No. 66.) The Court has reviewed both sets of objections carefully and overrules them for the reasons explained above.

under the exception is "extremely high" and difficult to meet. *Hetterscheidt v. Aleris Specification Alloys, Inc.*, 687 F. App'x 462, 464-65 (6th Cir. 2017).

Olivares has not satisfied that "extremely high" burden here. Simply put, Olivares has not identified any admissible evidence that could support his claim that his shoulder was not actually repaired in 1998. Indeed, as the Magistrate Judge pointed out, the evidence in the record shows that Olivares' shoulder *was* repaired. Several doctors who examined Olivares and/or his medical records in the years after his 1998 surgery discovered "only degenerative changes [to Olivares' rotator cuff] and no tears at all" at that time. (R&R, ECF No. 54, PageID.482-483, citing ECF No. 36, PageID.174-176, 180-181, 190-191.) And Olivares has not identified any contrary evidence in the record. Instead, Olivares says that Magistrate Judge misinterpreted this evidence. He says because these doctors only saw "degenerative changes," that is proof that the doctors did not see evidence of a successful repair of his rotator cuff. (*See* Am. Objections, ECF No. 66, PageID.666.) But that interpretation of the evidence is not reasonable. If, as Olivares insists, his torn rotator cuff was never repaired, the doctors who examined his shoulder and/or examined his medical records following his 1998 surgery would have discovered an unrepaired, torn left rotator cuff. Instead, they found just the opposite: that Olivares' rotator cuff was "intact." (ECF No. 36, PageID.175.) Olivares further argues that a "2021 ultrasound" that showed a tear in his left rotator cuff is "consistent" with a finding

8

that his 1998 tear was never repaired. (Am. Objections, ECF No. 66, PageID.654.) But just because Olivares suffered a tear to his rotator cuff in 2021 is not proof that that tear is the *same* tear that he suffered in 1998. And Olivares has not identified any evidence in the record – apart from his own, unsupported assertions – that the 2021 tear and the 1998 tear are actually the same.

Moreover, even if Olivares' shoulder was not successfully repaired in 1998, Olivares has not identified any admissible evidence that *Defendants* acted intentionally to sabotage the repair. In the Objections, Olivares says that during a 1999 legal proceeding arising out of his shoulder injury, Williams "admitted before the Kosciusko Circuit Court that he had committed an intentional tort" when he purportedly interfered with Olivares' shoulder surgery. (*Id.*, PageID.653.) But Olivares' only citation to the record supporting that assertion is to his own, unsupported allegations in the Amended Complaint. (*See id.*) Olivares has not, for example, provided a transcript of the 1999 hearing or presented any other evidence that Williams made such an admission. Nor has he specifically identified what Williams purportedly admitted to in that proceeding. Olivares simply has not presented *any* admissible evidence in the record that could support a finding that Williams (or any representative of the Defendant) intentionally interfered with Olivares' 1998 shoulder surgery and did so in order to intentionally injure Williams.

9

Finally, Olivares' remaining objections to the R&R are vague, conclusory, and largely repeat the same arguments that Olivares made in opposition to Defendants' motion for summary judgment rather than specifically identifying any legal errors in the R&R. Those objections are therefore insufficient as a matter of law and are overruled on that additional basis. *See*, *e.g.*, *Fields v. Lapeer 71-A District Court Clerk*, 2 F. App'x 481, 482 (6th Cir. 2001) (holding that plaintiff had "waived any challenge to the district court's conclusions" because his objections to report and recommendation did not specifically address the Magistrate Judge's reasoning); *Zimmerman v. Cason*, 354 Fed. App'x 228, 230 (6th Cir. 2009) ("the filing of vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object"); *Aldrich v. Bock*, 327 F.Supp.2d 743, 747 (E.D. Mich. 2004) (overruling objections to report and recommendation and explaining that "an 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context").

## IV

For all of the reasons explained above, Olivares' Objections (ECF Nos. 65, 66) to the R&R are **OVERRULED**, and the recommended disposition of the R&R (ECF No. 54) is **ADOPTED**.